**COX FRICKE LLP**
A LIMITED LIABILITY LAW PARTNERSHIP LLP
RANDALL C. WHATTOFF          9487-0
    rwhattoff@cfhawaii.com
KAMALA S. HAAKE              9515-0
    khaake@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawaiʻi 96813
Telephone:  (808) 585-9440
Facsimile:  (808) 275-3276

**PERKINS COIE LLP**
SELENA J. LINDE (*Pro Hac Vice* forthcoming)
VIVEK CHOPRA (*Pro Hac Vice* forthcoming)
STEPHANIE A. VANCIL DE OLIVEIRA (HI Bar No. 11241)
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211

Attorneys for Plaintiffs
HAWAIIAN ELECTRIC INDUSTRIES, INC.,
HAWAIIAN ELECTRIC COMPANY, INC., and
MAUI ELECTRIC COMPANY, LIMITED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HAWAIIAN ELECTRIC INDUSTRIES, INC.; HAWAIIAN ELECTRIC COMPANY, INC.; AND MAUI ELECTRIC COMPANY, LIMITED, | CIVIL NO. _____ |
| Plaintiffs, | COMPLAINT FOR DECLARATORY RELIEF AND CONTRACTUAL DAMAGES; EXHIBITS 1-4; DEMAND FOR JURY TRIAL; SUMMONS |
| vs. | |
| XL INSURANCE AMERICA, INC.; ALLIANZ GLOBAL RISKS US | |

INSURANCE COMPANY; THE
PRINCETON EXCESS AND
SURPLUS LINES INSURANCE
COMPANY; AND GENERAL
SECURITY INDEMNITY
COMPANY OF ARIZONA,

               Defendants.

## COMPLAINT FOR DECLARATORY RELIEF
## AND CONTRACTUAL DAMAGES

Plaintiffs Hawaiian Electric Industries, Inc. ("HEI"), Hawaiian Electric Company, Inc., ("HECO"), and Maui Electric Company, Limited ("MECO"), (collectively, the "Hawaiian Electric Companies" or "Plaintiffs"), by and through counsel, for their Complaint against Defendants XL Insurance Company of America, Inc., Allianz Global Risks US Insurance Company, the Princeton Excess and Surplus Lines Insurance Company, and General Security Indemnity Company of Arizona (collectively, the "HEI Insurers" or "Defendants") allege as follows:

## I.    INTRODUCTION

1.    The Hawaiian Electric Companies bring this lawsuit for declaratory relief and breach of contract against the HEI Insurers who sold commercial property insurance policies to HEI and its affiliates and subsidiaries, including HECO and MECO effective September 1, 2022, through September 1, 2023 (each a "HEI Policy" and together, the "HEI Policies").

2.      In August 2023, during the policy period of the HEI Policies,
wildfires devastated the County of Maui, State of Hawaii (the "Maui Wildfires"),
resulting in the deaths of over 100 individuals, numerous other injuries, and the
destruction of thousands of homes and businesses on Maui, including the Hawaiian
Electric Companies' business property.

3.      The HEI Policies require the HEI Insurers to indemnify the Hawaiian
Electric Companies for, amongst other things: (1) physical loss or damage to the
Hawaiian Electric Companies' covered property caused by the Maui Wildfires; (2)
reasonable and necessary Extra Expense to continue operations following covered
loss or damage to covered property; (3) Replacement Transformers and Spare
Equipment; and (4) Debris Removal.[1]

4.      The HEI Insurers have acknowledged coverage under the HEI
Policies for loss or damage to the Hawaiian Electric Companies' property caused
by the Maui Wildfires and have paid a portion of the Hawaiian Electric
Companies' loss. Nevertheless, a controversy has arisen between Plaintiffs and the
HEI Insurers as to the extent of damage, the nature of coverage, and apportionment
under the policies.

5.      Plaintiffs seek declaratory relief pursuant to the Declaratory Judgment
Act, 28 U.S.C. § 2201, and ask this Court to issue an order holding that the HEI

---

[1] Capitalized terms are defined in the relevant policies and herein.

Insurers are obligated to indemnify Plaintiffs for all claimed loss, damage, Extra

Expense, and other costs incurred in connection with the Maui Wildfires. A

justiciable controversy exists between the Hawaiian Electric Companies and the

HEI Insurers because: (1) this dispute involves the rights or other legal relations of

the parties seeking declaratory relief; (2) the claim of right or other legal interest is

asserted against those who have an interest in contesting the claim; (3) actual

controversies exist between parties whose interests are real and adverse; (4) the

issues involved are ripe for judicial determination; and (5) a judgment would

finalize the controversy and offer relief from uncertainty.

6.      Moreover, the Hawaiian Electric Companies bring claims for breach

of contract to recover monetary damages resulting from the HEI Insurers' material

breach and/or repudiation of obligations under each of the HEI Insurer's respective

insurance contracts by refusing to pay amounts due.

## II.    PARTIES

### A.    Plaintiffs

7.      HEI, together with its affiliates and electric utility subsidiaries, serve

95 percent of the State of Hawaii's approximately 1.4 million residents on the

islands of Oahu, Maui, Hawaii, Lanai and Molokai.

8.      Plaintiff Hawaiian Electric Industries, Inc. is a Hawaii corporation,

having its principal places of business in Honolulu, Hawaii.

9. Plaintiff Hawaiian Electric Company, Inc. is a Hawaii corporation having its principal place of business in Honolulu, Hawaii.

10. Plaintiff Maui Electric Company, Limited is a Hawaii corporation having its principal place of business in Kahului, Hawaii.

**B.    Defendants**

11. On information and belief, XL Insurance America, Inc. ("XL") is a Delaware corporation, with its principal place of business in Stamford, Connecticut.

12. On information and belief, Allianz Global Risks US Insurance Company ("Allianz") is an Illinois corporation, with its principal place of business in Chicago, Illinois.

13. On information and belief, the Princeton Excess and Surplus Lines Insurance Company ("Princeton") is a Delaware corporation, with its principal place of business in Princeton, New Jersey.

14. On information and belief, General Security Indemnity Company of Arizona ("SCOR") is an Arizona corporation, with its principal place of business in New York, New York.

### III.    JURISDICTION AND VENUE

15. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because, on information belief, there is diversity of citizenship

between all Plaintiffs, on the one hand, and all Defendants, on the other, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. All Plaintiffs are citizens of the State of Hawaii and, on information and belief, none of the Defendants are citizens of the State of Hawaii.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the property that is the subject of the action is situated in this district. Defendants issued their respective insurance policies to HEI and its affiliates and subsidiaries—all residents of the State of Hawaii—to cover the Hawaiian Electric Companies' property in the State of Hawaii.

## IV.    RELEVANT FACTS

### A.    The Maui Wildfires

17.     On August 8, 2023, a series of wildfires devastated the island of Maui (the "Maui Wildfires"). Dry conditions and strong winds caused the fires to spread rapidly and uncontrollably. As a result, the historic town of Lahaina was decimated.

18.     During the fires, temperatures in Lahaina reached at least 1,800 ˚F (982 ˚C), and likely, above 2,200 ˚F (1,370 ˚C).

19.     The Hawaiian Electric Companies' business property covered under the HEI Policies was destroyed, including Lahaina Substation 34 operated by

MECO ("Substation 34"), the Substation 34 warehouse and office and related inventory ("Warehouse and Office"), electrical equipment at Substation 34, and the Hawaiian Electric Companies' transmission and distribution assets in the Lahaina area, including poles and related equipment ("Transmission and Distribution Assets").

20.    During and immediately following the wildfires, the Hawaiian Electric Companies worked on the ground to assess risk and restore electricity to Maui communities. By August 11, 2023, the Hawaiian Electric Companies had 300 employees and contractors on the ground on Maui to assist in the emergency response. By August 25, 2023, the Hawaiian Electric Companies restored power to approximately 95 percent of customers in West Maui.

**B.    2022-2023 Property Insurance Program**

21.    At the time of the Maui Wildfires, the Hawaiian Electric Companies were insureds under a commercial property insurance program, effective September 1, 2022, through September 1, 2023, providing $500 million in insurance coverage (the "Property Insurance Program") on policies issued by ten insurer groups (the "Property Insurers") on eight separate policies (the "Property Policies"). The Property Insurance Program is subject to a single $2.5 million deductible.

22.    The Property Policies are written on two distinct policy forms: (1) a form authored by Associated Electric & Gas Insurance Services ("AEGIS") (the "AEGIS Form") and (2) an older form written to insure HEI and its affiliates and subsidiaries (the "HEI Form"). The AEGIS Form and the HEI Form contain substantive coverage non-concurrencies. The HEI Form generally affords broader coverage than the AEGIS Form.

23.    Insurers AEGIS, Ascot Syndicate 1414, IQUW Syndicate 1856, Energy Insurance Mutual, QBE International Markets, Certain Underwriters at Lloyd's London and Insurers subscribing to UMR No. B128418528BE22's (the "AEGIS Insurers") policies are written on the AEGIS Form and provide up to $355 million in coverage, or 71 percent of the total limits of the Property Insurance Program. At this time, this Complaint is directed only at the HEI Insurers. However, the Hawaiian Electric Companies may seek to add the AEGIS Insurers to this litigation if negotiation and mediation with those carriers is unsuccessful

24.    The HEI Policies are written on the HEI Form and provide up to $145 million in coverage, or the remaining 29 percent of the total limits of the Property Insurance Program.

25.    XL issued a policy with the number US00012194PR22A, providing up to $25 million in coverage (the "XL Policy"). A true and correct copy of the XL Policy is attached hereto as **Exhibit 1**.

26.    Allianz issued a policy with the number USN00036822, providing up to $25 million in coverage (the "Allianz Policy"). A true and correct copy of the Allianz Policy is attached hereto as **Exhibit 2**.

27.    Princeton issued a policy with the number 58-A3-PP-0000244-03, providing up to $60 million in coverage (the "Princeton Policy"). A true and correct policy of the Princeton Policy is attached hereto as **Exhibit 3.**

28.    SCOR issued a policy with the number FA0077687-2022-1, providing up to $35 million in coverage (the "SCOR Policy"). A true and correct copy of the SCOR Policy is attached hereto as **Exhibit 4.**

**1.    The HEI Policies**

29.    The HEI Policies provide that they shall be governed and construed in accordance with the law of Hawaii. *See* Ex. 1. at 16 (Choice of Law and Jurisdiction).

30.    HEI is the Named Insured under the HEI Policies. *See* Ex. 1 at 16 (Named Insured). HEI's subsidiaries and affiliates, including HECO and MECO, are Insureds under the HEI Policies. *See id.*

31.    The HEI Form's Property Damage Insuring Agreement provides, "[t]his Policy insures against risks of direct physical loss or damage caused by an *OCCURRENCE to property insured except as hereinafter excluded or limited, and only for such loss or damage commencing during the policy period while

located within the TERRITORY as described in this Policy." Ex. 1 at 17, § A (Property Damage/ Machinery Breakdown Coverage), ¶ 1 (Insuring Agreement).

32.    The HEI Form defines "OCCURRENCE" as "[t]he sum of all loss or damage of the type insured, including any insured *TIME ELEMENT loss, arising out of or caused by one event of physical loss or damage." Ex. 1 at 43 (Definitions, Occurrence).

33.    The HEI Form defines "PROPERTY INSURED" to include "[r]eal and personal property owned by the Insured" "unless excluded or limited, while at *INSURED LOCATIONS, or within 1,000 feet thereof." Ex. 1, at 17, § A (Property Damage/ Machinery Breakdown Coverage), ¶ 2 (Property Insured).

34.    The HEI Form defines "INSURED LOCATIONS" as "all locations listed per the schedule on file with Insurers including Miscellaneous Unnamed Locations and Newly Acquired Property." Ex. 1, at 42 (Definitions, Insured Locations).

35.    Substation 34, Substation 84, and the former Lahaina Branch of American Savings Bank ("ASB") are identified Insured Locations on file with the HEI Insurers.

36.    With regard to "MISCELLANEOUS UNNAMED LOCATIONS," the HEI Form provides,

> This Policy also insures the property of the Insured at locations which are not specifically listed in the statement of values in

> which the Insured has an insurable interest. This Extension only insures property which is similar in nature to property insured by this Policy and not otherwise excluded. Loss or damage caused by **\*EARTHQUAKE** in California, or **\*HIGH HAZARD FLOOD** is not insured under this Extension, except as provided in the Declarations of this Policy.

Ex. 1, at 24, § A (Property Damage/ Machinery Breakdown Coverage), ¶ 8(N) (Property Damage Extensions of Coverage, Miscellaneous Unnamed Locations).

37.    As relevant to this dispute, the policy section titled "PROPERTY EXCLUDED," in the HEI Form states: "[t]his Policy excludes . . . E. Overhead electrical transmission and distribution lines and related equipment, including but not limited to poles, towers, electrical conduit and other property mounted thereon, located beyond 1,000 feet from the boundary of any *INSURED LOCATION." Ex. 1, at 17-18, § A (Property Damage/ Machinery Breakdown Coverage), ¶ 3 (Property Excluded).

38.    In addition to coverage for the Hawaiian Electric Companies' real and personal property, the HEI Policies provide, amongst other things, coverage for Extra Expense, Rental Transformers and Spare Equipment, and Debris Removal.

39.    With regard to coverage for "EXTRA EXPENSE", the HEI Form provides,

> A. EXTRA EXPENSE
>
> This Policy insures the reasonable EXTRA EXPENSE incurred by the Insured during the *PERIOD OF RESTORATION that the Insured would not have incurred if there had been no direct

physical loss or damage caused by perils not otherwise excluded to property at an *INSURED LOCATION. The expense must be incurred by the Insured for the purpose of minimizing the interruption of the Insured's *OPERATIONS or continuing the Insured's *OPERATIONS.

1. EXTRA EXPENSE is the reasonable extra costs incurred to:

a. Avoid or minimize the interruption of business or to continue *OPERATIONS at an *INSURED LOCATION, or at replacement locations or temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

b. Minimize the interruption of business if the Insured cannot continue *OPERATIONS.

c. Any other costs excess of the total cost normally chargeable to an *INSURED LOCATION over and above the total cost that would have been incurred to conduct the business had no loss occurred.

The amount of the EXTRA EXPENSE loss will be reduced by any salvage value remaining at the end of the *PERIOD OF RESTORATION for property obtained in connection with any of the above.

2. In no event shall EXTRA EXPENSE include:

a. Loss of revenue;

b. Costs which would normally have been incurred in conducting the *OPERATIONS during the same period had no loss or damage insured against under this Policy occurred;

c. The cost of repair or replacement of property that has been lost or damaged;

d. The cost to purchase replacement electrical power, unless such coverage is scheduled to this Policy.

The coverage provided under this Clause shall be subject to the applicable SUB-LIMIT stated in the Declaration which limit is part of and not in addition to the Policy LIMITS OF INSURANCE.

Ex. 1, at 45, § B (Time Element Coverage), ¶ A (Extra Expense).

40.     "PERIOD OF RESTORATION" is defined in relevant as,

the period of time, that begins immediately after the time of direct physical loss or damage insured against under this Policy occurs at an *INSURED LOCATION and ends on the earlier of: the date when the property at an *INSURED LOCATION is repaired, rebuilt, or replaced with reasonable diligence and comparable quality; or the date when the business is resumed at a new permanent location and is not limited by the expiration of this Policy.

Ex. 1 at 43 (Definitions, Period of Restoration).

41.     With regard to coverage for "RENTAL TRANSFORMERS AND SPARE EQUIPMENT," the HEI Form provides that the following expense shall be covered:

(1) The additional expense incurred for the temporary rental of replacement transformers during the *PERIOD OF RESTORATION;

(2) In the event of any insured loss to the Insured's property at any insured generating or substation location, the following additional costs: removal and transportation of the Insured's

- 13 -

owned and/or un-owned spare equipment from the location
of such spare equipment to the *INSURED LOCATION
where the loss occurred. Coverage shall also include the
installation costs to install such spare equipment at the
location where the loss occurred, as well as the subsequent
removal and transportation of such spare equipment back to
the original storage location, after the repaired property has
been returned to the location where the loss occurred.
Owned spares used to expedite repairs shall be indemnified
for depreciation and usage as if the equipment were rented
from a third party.

Ex. 1 at 25-26, § A (Property Damage/ Machinery Breakdown Coverage), ¶ 8(P)

(Property Damage Extensions of Coverage, Rental Transformers and Spare

Equipment).

42.    The HEI Form further provides coverage for "the cost incurred in the

removal of debris from an *INSURED LOCATION . . .  of property insured or

other property, damaged or destroyed by a peril not otherwise excluded, during the

Policy Period." Ex. 1 at 18-19, § A (Property Damage/Machinery Breakdown

Coverage), ¶ 4 (Debris Removal).

43.    The HEI Form contains a "VALUATION" provision, which provides

as follows:

At the time of loss, the basis of valuation of the loss, unless
otherwise endorsed hereon, will be as follows:

A. Buildings and structures; machinery and equipment;
   and office contents, and foundations: the
   *REPLACEMENT COST if actually repaired, rebuilt,
   or replaced; if not repaired, rebuilt, or replaced, the
   *ACTUAL CASH VALUE. The Insured may elect

> not to repair or replace the insured real or personal property lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *REPLACEMENT COST basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an *INSURED LOCATION under this Policy;
>
> . . .
>
> Insurers will not pay more than the least of the following amounts: the applicable Policy Limits of Insurance, Policy SUB-LIMIT, or aggregate limit; the cost to repair; the cost to rebuild or replace, on the same premises, the lost or damaged property with new property of comparable material and quality, and used for the same purpose; or the amount actually spent necessary to repair, rebuild, or replace the lost or damaged property. If the Insured has not commenced the repair, rebuilding, or replacement within two years of the date of loss, the basis of valuation will be the *ACTUAL CASH VALUE.

Ex. 1, at 31, § A Conditions, ¶ 1 (Valuation).

44.   The HEI Form defines "REPLACEMENT COST" as:

> [T]he cost to repair, rebuild, or replace the lost or damaged property with new property of comparable material and quality, determined at the time and place of loss, and without deduction for depreciation. Replacement Cost shall be deemed to include the functional replacement of such property that is obsolete or replaceable with more efficient items not more expensive than replacement cost of the original. This also includes but is not limited to opening and closing costs, subcontract costs, labor, overheads, materials and supplies, freights, tolls, demurrage, equipment rentals (including required operation, maintenance, and repair of such rentals), taxes, duties, customs fees, insurance, and costs further outlined in ADDITIONAL EXPENSES and PROFESSIONAL AND OTHER FEES.

- 15 -

Ex. 1, at 44 (Definitions, Replacement Cost).

45.    The HEI Form defines "ACTUAL CASH VALUE" as "*REPLACEMENT COST, at the time of loss and place of loss, of the lost or damaged property, less depreciation equal to 2% per annum with a maximum depreciation of 40%." Ex. 1, at 41 (Definitions, Actual Cash Value).

46.    With regard to allocation, the HEI Form's "PRIORITY OF PAYMENT" provision provides,"[i]n the event of an *OCCURRENCE giving rise to a claim under this Policy, the sole right of apportioning or prioritizing such claim to any coverage, clause or Section of the Policy shall be the right of the first Named Insured." Ex. 1, at 34, § A (Conditions), ¶ 5(G) (Requirements in Case of Loss, Priority of Payment).

47.    The HEI Form's "Contributing Insurance" provision further provides, "[t]his Policy will contribute to the total of each loss otherwise payable herein to the extent of the participation of this Policy in the total limit of liability as provided by all policies written upon the same plan, conditions, and provisions as those contained in this Policy." Ex. 1, at 36, § A (Conditions), ¶ 6 (Contributing Insurance).

## C.    Claims Submissions and Negotiation

48.    Since the date of loss, the Hawaiian Electric Companies fully cooperated and negotiated in good faith with the Property Insurers to quickly

resolve this claim and recover amounts owed under the Property Policies. The Hawaiian Electric Companies provided notice of loss to the Property Insurers through its broker immediately following the loss.

49.    In September 2023, while still in the midst of emergency response efforts, the Hawaiian Electric Companies began responding to the Property Insurers' requests for information. On October 3, 2023, less than two months after the devastating wildfires, the Hawaiian Electric Companies hosted the Property Insurers' third-party adjuster for an initial site visit in Lahaina.

50.    Given the catastrophic nature of the fires and limited available resources, the full extent of the damage was unknown even months after the Maui Wildfires. Nevertheless, the Hawaiian Electric Companies worked swiftly and diligently to provide the Property Insurers with all of the information they requested.

51.    The Hawaiian Electric Companies submitted their First Claim Submission to the Property Insurers on February 2, 2024. Since that time, the Hawaiian Electric Companies have continued to update the Property Insurers, fulfill all information requests, host multiple site visits, and provide updated claim submissions. The Hawaiian Electric Companies submitted updated claim submissions on June 17, 2024, February 19, 2025, and July 11, 2025. The Hawaiian Electric Companies' claim currently totals $80,228,334 (the "Claim").

52.     In hopes of reaching a resolution of the Claim, the Hawaiian Electric Companies spearheaded settlement negotiations with the Property Insurers. The Hawaiian Electric Companies retained professionals to evaluate the electrical equipment at Substation 34.

53.     First, the Hawaiian Electric Companies hired Electric Power Constructors Inc. ("EPC") to test all major equipment, to the extent possible, at Substation 34. EPC tested the following equipment: (a) four 10/12.MVA transformers ("Medium Power Transformers"); (b) two station service transformers ("Instrument and Auxiliary Transformers"); (c) six 12kv circuit breakers; and (d) four 15kV switchgear (collectively, the "Substation 34 Electrical Equipment").

54.     Second, the Hawaiian Electric Companies retained Filsinger Energy Partners ("Filsinger"), including multiple professionals each with more than three decades of experience in the electric utility industry and industrial estimating, to review the EPC testing and conduct an independent assessment of the damage to the Substation 34 Electrical Equipment, including reliability and safety concerns.

55.     On February 6, 2025, the Hawaiian Electric Companies sent a letter to the Property Insurers articulating their coverage positions supporting their Claim.

56.     On February 19, 2025, the Hawaiian Electric Companies submitted to the Property Insurers a report authored by Filsinger (the "Filsinger Report")

detailing Filsinger's assessment of the damage to Substation 34. The Filsinger Report detailed that the "damage suggests that temperatures reached at least 1,800 ˚F (982 ˚C) and likely above 2,200 ˚F (1,370 ˚C) for significant periods of time in and around the substation," which is more than eight times the maximum temperature rating for all equipment at the substation. Filsinger concluded that "HECO should not attempt to place any of the components [of Substation 34 or the Substation 34 Electrical Equipment] back in service due to damage, safety, and reliability issues" in light of extreme heat exposure and noted significant concerns that return of the equipment to service "could cause catastrophic damage" to the equipment, the operators, and/or the Maui electrical grid, including "arching, sparks, and wildfire."

57.     In February 2025, Hawaiian Electric Companies issued another interim payment demand. Following that, the Hawaiian Electric Companies and the Property Insurers exchanged additional expert reports.

58.     On May 12, 2025, the Property Insurers agreed to extend the Property Policies' purported suit limitations clauses and time limitations for recovery of Replacement Costs through August 8, 2026.

59.     Despite the Hawaiian Electric Companies' efforts to resolve this Claim, negotiations reached an impasse. As a result, the Hawaiian Electric Companies are forced to initiate litigation.

## V.    CLAIMS FOR RELIEF

### A.    First Claim – Declaratory Relief – Apportionment of Loss

60.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

61.    An actual controversy exists between the Hawaiian Electric Companies and the HEI Insurers with regard to the HEI Insurers' obligation to fully indemnify the Hawaiian Electric Companies for all loss, Extra Expense and other costs covered exclusively under the HEI Policies.

62.    At the time of the Maui Wildfires, the Hawaiian Electric Companies were insured under the Property Insurance Program providing $500 million in coverage on two distinct policy forms: the AEGIS Form and the HEI Form. Together, the HEI Policies collectively provide $145 million in coverage, or 29 percent of the total Property Insurance Program Limits. The AEGIS Policies collectively provide coverage for the remaining $355 million, or 71 percent of the program limits.

63.    The HEI Policies' Priority of Payment provision gives HEI, as the First Named Insured, the sole right of apportioning or prioritizing a claim to any coverage, clause, or section of the HEI Policies.

64.    The HEI Policies' Contributing Insurance provision requires the HEI Insurers to contribute to the "total of each loss" payable under the HEI Policies "to the extent of participation" of each Policy in "the total limit of liability" provided by "all policies written upon the same, plan, conditions, and provisions."

65.    The AEGIS Policies and the HEI Policies are not written upon the same plan, conditions, and provisions. Substantive differences in the two coverage forms create coverage non-concurrencies. The HEI Form affords coverage for certain loss and other expense where the AEGIS Form does not, including for certain Transmission and Distribution Assets, Replacement Transformers and Spare Equipment, and Debris Removal related to removal of damaged Transmission and Distribution Assets. As such, when loss or expense is covered exclusively under the HEI Policies, it must be apportioned exclusively to those insurers with policies written upon the "same plan, conditions, and provisions", *i.e.*, exclusively amongst the HEI Insurers.

66.    The HEI Insurers have acknowledged non-concurrent coverages and agreed to indemnify the Hawaiian Electric Companies for amounts covered exclusively under the HEI Policies. Nevertheless, the HEI Insurers have refused to pay more than 29 percent of any loss or expense covered exclusively under the HEI Policies. In other words, the HEI Insurers contend that the Hawaiian Electric Companies should recover only 29 percent of the total covered loss and expense,

even if certain loss and expense is <u>only</u> covered by the HEI Policies and is not otherwise covered by the AEGIS Form and, therefore, cannot be apportioned to the AEGIS Insurers.

67.    There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

68.    The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that all loss covered exclusively under the HEI Policies must be apportioned to and fully indemnified by the HEI Insurers.

**B.    Second Claim – Declaratory Relief – Substation 34 Rebuild**

69.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

70.    There is an actual controversy between the Hawaiian Electric Companies and the HEI Insurers with regard to whether Substation 34 and Substation 34 Electrical Equipment can be reliably and safely repaired, or if instead, Substation 34 must be rebuilt and Substation 34 Electrical Equipment replaced.

71.    The HEI Policies provide coverage for physical loss or damage to the Hawaiian Electric Companies' real and personal property at or within 1,000 feet of

an Insured Location, that is covered under the HEI Policies and caused by an Occurrence.

72.    The Maui Wildfires constitute an Occurrence within the meaning of the HEI Policies.

73.    Substation 34 is an Insured Location under the HEI Policies. Substation 34 structures and Substation 34 Electrical Equipment constitute Property Insured at an Insured Location not otherwise excluded under the HEI Policies. This Property Insured suffered physical loss and/or damage caused by the Maui Wildfires.

74.    Amounts to be incurred for the Substation 34 rebuild are covered under both the HEI Policies and the AEGIS Policies. The costs for the rebuild must be allocated amongst all of the Property Insurers.

75.    Temperatures at Substation 34 during the wildfires reached at least 1,800 °F (982 °C). Maximum temperature ratings for the Substation 34 Electrical Equipment were 221°F at the highest, and even less for other equipment. During the wildfires, the Substation 34 Electrical Equipment was exposed to temperatures well in excess of the maximum temperature ratings.

76.    The rebuild and replacement of Substation 34 and Substation 34 Electrical Equipment has commenced but is not complete. The rebuild has been delayed due to a multitude of factors, including the catastrophic nature of the loss,

Hawaii's remote location, the need to satisfy rigorous regulatory requirements, and the need for highly specialized professionals on Maui to rebuild the substation and repair electrical equipment. The Hawaiian Electric Companies estimate that the rebuild will be completed by 2030.

77.    The Hawaiian Electric Companies have prepared and submitted to the Property Insurers a rebuild and replacement estimate. The Hawaiian Electric Companies have determined, and their experts at Filsinger have confirmed, that the Substation 34 Electrical Equipment cannot be safely or reliably returned to service or used in the Hawaiian Electric Companies' business. Returning the electrical equipment to service would pose an unreasonable and substantial threat to the Maui electrical grid and human safety, including catastrophic wildfire. The Hawaiian Electric Companies estimate that the cost to replace the Substation 34 Electrical Equipment and to rebuild Substation 34 will be $21.14 million.

78.    The Property Insurers contend that there is no need to rebuild Substation 34 or replace Substation 34 Electrical Equipment, and that instead, repair and reuse is warranted. The Property Insurers estimate that the cost to repair Substation 34 and Substation 34 Electrical Equipment will be approximately $7.26 million, and the HEI Insurers refuse to pay any more than their share of this amount, $2.1 million.

79.     The Hawaiian Electric Companies cannot and will not reenergize electrical equipment that poses a significant and unreasonable risk to the safety of the community.

80.     There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

81.     The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the HEI Insurers must indemnify the Hawaiian Electric Companies for the cost to rebuild Substation 34 and replace the Substation 34 Electrical Equipment, subject to appropriate allocation amongst all Property Insurers.

**C.     Third Claim – Breach of Contract – Substation 34 Rebuild**

82.     Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein. The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

83.     Amounts to be incurred for the rebuild of Substation 34 constitutes constitute costs to replace covered property at an Insured Location not otherwise excluded under the HEI Policies.

84.     Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the HEI

Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for the cost to replace Substation 34 Electrical Equipment or the rebuild of Substation 34.

85.    The HEI Insurers have repudiated and materially breached their obligations under the HEI Policies by refusing to fully indemnify Plaintiffs for amounts to be incurred for the replacement of Substation 34 Electrical Equipment and the rebuild of Substation 34.

86.    The Hawaiian Electric Companies estimate they will incur $21.14 million to Replace Substation 34 Electrical Equipment and rebuild Substation 34. The HEI Insurers refused to pay more than a fraction of that cost.

87.    As a direct and proximate cause of the HEI Insurers' contractual breaches, Plaintiffs have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

## D.    Fourth Claim – Declaratory Relief –Substation 34 Warehouse and Office Rebuild

88.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

89.    There is an actual controversy between the Hawaiian Electric Companies and the HEI Insurers with regard to the cost of rebuilding and replacing

the Substation 34 office and warehouse and related inventory (the "Warehouse and Office").

90.    The Warehouse and Office are located at an Insured Location, Substation 34, and were completely destroyed during the Maui Wildfires.

91.    Amounts to be incurred for the Warehouse and Office rebuild are covered under both the HEI Policies and the AEGIS Policies. The costs for the rebuild must be allocated amongst all of the Property Insurers.

92.    The HEI Insurers do not dispute that the Warehouse and Office must be rebuilt. However, the HEI Insurers contend that the Hawaiian Electric Companies' rebuild estimates are unreasonable. The Hawaiian Electric Companies estimate that the cost to rebuild and replace the Warehouse and Office will be approximately $3.8 million.

93.    The Property Insurers estimate that the cost to rebuild the Warehouse and Office will total approximately $1 million, and the HEI Insurers refuse to pay any more than their share of this amount, $290,000.

94.    There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

95.     The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the Hawaiian Electric Companies' estimate of the cost to rebuild the Warehouse and Office is reasonable and the HEI Insurers

must indemnify the Hawaiian Electric Companies for that loss, subject to appropriate allocation amongst all Property Insurers

**E.      Fifth Claim – Breach of Contract – Warehouse and Office Rebuild**

96.     Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

97.      The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

98.     Amounts to be incurred for the Warehouse and Office rebuild constitute costs to replace covered property at an Insured Location not otherwise excluded under the HEI Policies.

99.     Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the HEI Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for the cost of the Warehouse and Office rebuild.

100.    The HEI Insurers have repudiated and materially breached their obligations under the HEI Policies by refusing to fully indemnify Plaintiffs for amounts to be incurred for the Warehouse and Office rebuild.

101.   The Hawaiian Electric Companies estimate they will incur $3.8 million for the Warehouse and Office Rebuild.  The HEI Insurers refused to pay more than a fraction of that cost.

102.   As a direct and proximate cause of the HEI Insurers' contractual breaches, Plaintiffs have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**F.    Sixth Claim – Declaratory Relief – Substation 84**

103.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

104.   An actual controversy exists between Plaintiffs and the HEI Insurers with regard to the HEI Insurers' obligations to pay amounts the Hawaiian Electric Companies incurred to install an additional transformer and related equipment at Substation 84, following the destruction of Substation 34, as an Extra Expense.

105.    The HEI Policies provide coverage for reasonable Extra Expense incurred to continue the Insureds' business operations or minimize interruption at an Insured Location during the Period of Restoration or at a replacement location following loss or damage to property at an Insured Location.

106.    Substation 34 and Substation 84 are Insured Locations under the HEI

Policies. The Hawaiian Electric Companies' covered property at Substation 34 was

destroyed and rendered non-operational due to the Maui Wildfires.

107.    In January 2024, during the Period of Restoration, the Hawaiian

Electric Companies incurred expense to install an additional transformer at

Substation 84. The additional transformer at Substation 84 was installed to replace

a temporary mobile substation that was energized as part of the Hawaiian Electric

Companies' emergency efforts to restore power to Maui immediately after the

wildfires that destroyed Substation 34. Replacement of the temporary mobile

substation was necessary to ensure availability of the mobile substation to respond

to future emergency needs. The transformer at Substation 84 is necessary to

minimize the interruption of the Hawaiian Electric Companies' business and

continue operations until substation 34 can be rebuilt.

108.    The HEI Insurers have declined coverage for and refused to pay

amounts incurred by the Hawaiian Electric Companies in connection with the

installation of the additional transformer at Substation 84.

109.    There is an actual controversy between parties whose interests are

real and adverse, and the issues are ripe for judicial determination.

110.    The Hawaiian Electric Companies seek a declaration from this Court

pursuant to 28 U.S.C. § 2201 that the HEI Insurers must indemnify the Hawaiian

Electric Companies for the cost of installation of the additional transformer at Substation 84 and related expense as reasonable Extra Expense under the HEI Policies.

**G.    Seventh Claim – Breach of Contract – Substation 84**

111.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

112.   The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

113.   The installation of an additional transformer at Substation 84 constitutes reasonable Extra Expense within the meaning of the HEI Policies.

114.   Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the HEI Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for the cost of the additional transformer at Substation 84.

115.   The HEI Insurers have materially breached their obligations under the HEI Policies by refusing to indemnify Plaintiffs for amounts incurred to install an additional transformer at Substation 84.

116.   The Hawaiian Electric Companies incurred $3.84 million in connection with the installation of the additional transformer at Substation 84.

117.   As a direct and proximate cause of the HEI Insurers' contractual breaches, Plaintiffs have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

## H.    Eighth Claim – Declaratory Relief – Transmission and Distribution Assets

118.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

119.   There is an actual controversy between the Hawaiian Electric Companies and the HEI Insurers with regard to coverage for loss and damage to the Hawaiian Electric Companies' Transmission and Distribution Assets.

120.   Under the HEI Policies, Property Insured includes real and personal property owned by the Insureds, unless excluded or limited, at Insured Locations or within 1,000 feet thereof.

121.   Substation 34, Substation 84, and the former Lahaina Branch of the American Savings Bank and Miscellaneous Unnamed Locations are Insured Locations under the HEI Policies.

122.   A location qualifies as a Miscellaneous Unnamed Location if it is not specifically listed on the statement of values, and an Insured has an insurable interest in the location. Plaintiffs have an insurable interest in locations with their business property, including locations that contained pad-mounted transformers. Plaintiffs have a lawful and substantial economic interest in the safety and preservation of locations with pad-mounted transformers. Plaintiffs also have an insurable interest in locations with their real property, such as easements. As such, under the HEI Policies, locations with the Hawaiian Electric Companies' pad-mounted transformers and easements are Miscellaneous Unnamed Locations.

123.   The HEI Policies provide coverage for property at Miscellaneous Unnamed Locations that is: (a) similar in nature to property insured under the HEI Policies and (b) not otherwise excluded. Transmission and Distribution Assets within 1,000 feet of these Insured Locations are similar in nature to other property insured under the HEI Policies.

124.   The HEI Policies do not exclude coverage for overhead Transmission and Distribution Equipment within 1,000 feet of an Insured Location. All Transmission and Distribution Equipment within 1,000 feet of an Insured Location are covered as Property Insured under the HEI Policies.

125.   The Hawaiian Electric Companies' Transmission and Distribution Assets were completely destroyed in the Maui Wildfires.  This includes, but is not

limited to poles, meters, lines, transformers, and associated wiring and components. In order to reliably provide power to Lahaina and neighboring communities, the Transmission and Distribution Assets need to be replaced.

126.  The HEI Insurers have refused to indemnify the Hawaiian Electric Companies for any costs incurred for the destruction of Transmission and Distribution Assets.

127.  There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

128.  The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the HEI Insurers must indemnify the Hawaiian Electric Companies for the costs incurred to repair and replace Transmission and Distribution Assets.

I.  **Ninth Claim – Breach of Contract – Transmission and Distribution Assets**

129.  Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

130.  The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

131.  Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies

have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for the Transmission and Distribution Assets.

132.   The HEI Insurers have materially breached their obligations under the HEI Policies by refusing to indemnify the Hawaiian Electric Companies for any amounts incurred to repair and replace Transmission and Distribution Assets.

133.   The Hawaiian Electric Companies have incurred approximately $23 million to repair and replace covered Transmission and Distribution Assets within 1,000 feet of an Insured Location and continue to incur additional costs. The Hawaiian Electric Companies estimate at least an additional $4 million will be incurred to repair and replace covered Transmission and Distribution Assets.

134.   As a direct and proximate cause of the HEI Insurers' contractual breaches, Plaintiffs have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**J.    Tenth Claim – Declaratory Relief – Debris Removal**

135.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

136.   An actual controversy exists between Plaintiffs and the HEI Insurers with regard to the HEI Insurers' obligation to pay for expenses incurred for Debris Removal.

137.   The HEI Policies provide coverage for the cost incurred for the removal of debris from Insured Locations. Substation 34, Substation 84, the ASB Lahaina Branch and Miscellaneous Unnamed Locations with the Hawaiian Electric Companies' pad-mounted transformers and easements are Insured Locations.

138.   The Hawaiian Electric Companies have incurred significant costs to remove debris from these Insured Locations following the Maui Wildfires.  This includes, but is not limited to, costs for removing poles, transformers, lines, and other Transmission and Distribution Assets destroyed in the wildfires.

139.   The HEI Insurers have refused to indemnify the Hawaiian Electric Companies for any amounts incurred for Debris Removal.

140.   There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

141.   The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the HEI Insurers are obligated to indemnify the Hawaiian Electric Companies for costs incurred for Debris Removal.

**K.    Eleventh Claim – Breach of Contract – Debris Removal**

142.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

143.   The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

144.   Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for Debris Removal.

145.   The Hawaiian Electric Companies incurred $5.68 million in Debris Removal expense following the Maui Wildfires.

146.    The HEI Insurers have materially breached their obligations under the HEI Policies by refusing to indemnify Plaintiffs for any amounts incurred for Debris Removal.

147.   As a direct and proximate cause of the HEI Insurers' contractual breaches, Plaintiffs have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**L.    Twelfth Claim – Declaratory Relief – Security and Information Technology Extra Expense**

148.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

149.    There is a controversy between the Hawaiian Electric Companies and the Insurers with regard to coverage for security and information technology costs as Extra Expense.

150.    As a result of the Maui Wildfires, the Hawaiian Electric Companies incurred security and information technology costs that were reasonable and necessary to continue operations or minimize interruption of operations immediately following the destruction of Substation 34. Such costs include, but are not limited to, security services at the substations and locations where equipment was being staged for emergency response efforts and information and technology costs necessary to communicate and coordinate emergency response efforts following the loss of internet and cellular connectivity in Lahaina.

151.    If the Hawaiian Electric Companies did not incur these additional costs, the Hawaiian Electric Companies would not have been able to quickly restore electricity to Lahaina and the neighboring communities.

152.    Amounts incurred for security and information technology costs are covered under both the HEI Polices and the AEGIS Policies.

153.    On information and belief, the Property Insurers contend that the security and information technology costs are not a covered Extra Expense because they were not incurred in relation to any loss or damage to Property Insured.

154.    There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

155.    The Hawaiian Electric Companies seek a declaration from this Court pursuant to 28 U.S.C. § 2201 that the HEI Insurers must indemnify the Hawaiian Electric Companies for security and information technology costs as covered Extra Expense under the HEI Policies, subject to reasonable allocation amongst all Property Insurers

## M.    Thirteenth Claim – Breach of Contract – Security and Information Technology Extra Expense

156.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

157.    The HEI Polices constitute valid and enforceable contracts between the Hawaiian Electric Companies and the HEI Insurers.

158.    Security and Information Technology costs constitute Extra Expense under the HEI Policies because they were necessary to continue the Hawaiian Electric Companies' operations following the destruction of Substation 34.

159.    Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for security and information technology costs.

160.    The HEI Insurers have materially breached their obligations under the HEI Policies by refusing to indemnify Plaintiffs for amounts incurred for security and information technology Extra Expense.

161.    The Hawaiian Electric Companies incurred $844,770 in Security and Information and Technology Extra Expense.

162.    As a direct and proximate cause of the HEI Insurers' contractual breaches, the Hawaiian Electric Companies have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**N.    Fourteenth Claim – Breach of Contract – Temporary Mobile Substations**

163.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

164.    The costs incurred in connection with the temporary mobile substations constitute covered Spare Transformers and Equipment costs and/or Extra Expense under the HEI Policies.

165.    The Temporary Mobile Substations were energized immediately following the wildfires to continue the Hawaiian Electric Companies' operations and to restore electricity to Maui.

166.    Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for costs or expense for the temporary mobile substations.

167.    The Hawaiian Electric Companies have incurred $1.15 million in connection with the temporary mobile substations. The HEI Insurers have acknowledged coverage for the temporary mobile substations and have agreed to pay only 29 percent ($332,091) of the costs incurred for the mobile substations. However, the insurers have declined coverage for 71 percent of these costs.

168.    The HEI Insurers have materially breached their obligations under the HEI Policies by refusing to fully indemnify the Hawaiian Electric Companies for amounts incurred for the temporary mobile substations. Costs for the temporary mobile substations are exclusively covered under the HEI Form. All costs for the temporary mobile substations must be apportioned to and fully indemnified by the HEI Insurers under the HEI Policies' Priority of Payment and Contributing Insurance provisions.

169.   As a direct and proximate cause of the HEI Insurers' contractual breaches, the Hawaiian Electric Companies have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**O.    Fifteenth Claim – Breach of Contract – Pad-Mounted Transformers**

170.   Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

171.   As a result of the Maui Wildfires, at least 95 pad-mounted transformers were destroyed and rendered non-operational.

172.   Amounts to be incurred to replace pad-mounted transformers constitute costs to replace covered property at an Insured Location not otherwise excluded under the HEI Policies.

173.   Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for costs for pad mounted transformers.

174.   The Hawaiian Electric Companies estimate that they will incur approximately $3.36 million to replace pad-mounted transformers. The HEI Insurers have acknowledged coverage for pad-mounted transformers and have

agreed to pay only 29 percent (approximately $975,000) for the pad-mounted transformers. However, the HEI Insurers have declined coverage for 71 percent of these costs.

175.    The HEI Insurers have repudiated and materially breached their obligations under the HEI Policies by refusing to fully indemnify Plaintiffs for amounts to be incurred to replace pad-mounted transformers. Costs to replace pad-mounted transformers are exclusively covered under the HEI Form. All costs for the pad-mounted transformers must be apportioned to and fully indemnified by the HEI Insurers under the HEI Policies' Priority of Payment and Contributing Insurance provisions.

176.    As a direct and proximate cause of the HEI Insurers' contractual breaches, the Hawaiian Electric Companies have suffered substantial damages for which the HEI Insurers are liable in amounts to be established at trial, including compensatory and consequential damages and attorneys' fees.

**P.    Sixteenth Claim – Breach of Contract –Substation 34 Transmission and Distribution Rebuild**

177.    Plaintiffs hereby reallege and incorporate by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

178.    Amounts to be incurred for the Substation 34 Transmission and Distribution ("Substation 34 T&D") rebuild constitute costs to rebuild and replace

covered property at an Insured Location not otherwise excluded under the HEI Policies.

179.   Once the rebuild of Substation 34 is complete, additional expense will be incurred to reconnect the substation to the transmission and distribution lines that serve Lahaina. These costs include the installation of underground feeder circuits and above-ground steel pole structures.

180.   Plaintiffs have fulfilled all of their obligations under the HEI Policies. All conditions precedent to the HEI Insurers' obligation to pay under the Policies have occurred, have been met, or were waived. No limitations or exclusions preclude coverage for costs for the Substation 34 T&D rebuild.

181.   The Hawaiian Electric Companies estimate that they will incur approximately $8.99 million in Substation 34 T&D rebuild costs. The HEI Insurers have acknowledged coverage for the Substation 34 T&D rebuild and have agreed to pay only 29 percent (approximately $2.6 million) for the rebuild. However, the insurers have declined coverage for 71 percent of these costs.

182.   The HEI Insurers have repudiated and materially breached their obligations under the HEI Policies by refusing to fully indemnify Plaintiffs for amounts to be incurred for the Substation 34 T&D rebuild. Costs for the Substation 34 T&D rebuild substation are exclusively covered under the HEI Form. All costs for the Substation 34 T&D rebuild must be apportioned to and fully indemnified by

the HEI Insurers under the HEI Policies' Priority of Payment and Contributing

Insurance provisions.

183.   As a direct and proximate cause of the HEI Insurers' contractual

breaches, the Hawaiian Electric Companies have suffered substantial damages for

which the HEI Insurers are liable in amounts to be established at trial, including

compensatory and consequential damages and attorneys' fees.

**Q.    Seventeenth Claim – Declaratory Relief – Recovery of Replacement Costs**

184.   Plaintiffs hereby reallege and incorporate by reference the allegations

of each of the preceding paragraphs of this Complaint as though fully set forth

herein.

185.   There is an actual controversy with regard whether the HEI Insurers

are required to indemnify the Hawaiian Electric Companies for loss and damage on

a Replacement Cost basis.

186.   In the event of loss or damage to buildings, structures, machinery,

equipment, office contents, and foundations, the HEI Policies' Valuation provision

provides two alternative bases for calculating the value of the lost or damaged

property: (1) Actual Cash Value and (2) Replacement Cost. The HEI Policies

define Replacement Cost as "[t]he cost to repair, rebuild, or replace the lost or

damaged property with new property of comparable material and quality,

determined at the time and place of loss, and without deduction for depreciation."

"Actual Cash Value" is defined as Replacement Cost less depreciation "equal to

2% per annum with a maximum depreciation of 40%."

187.    The HEI Policies contains a provision, which purports to condition the

recovery of Replacement Costs on the Hawaiian Electric Companies

"commenc[ing] the repair, rebuilding, or replacement within two years of the date

of loss."

188.    The date of loss was August 8, 2023. HEI requested an extension of

the purported time limitation on recovery of Replacement Costs from August 8,

2025 to August 8, 2027 and explained that further extension would likely be

required in light of the practical and regulatory obstacles to rebuild and replace the

significant business property that was destroyed by the Maui Wildfires. The HEI

Insurers agreed to extend the HEI Policies' purported time limitation on recovery

of Replacement Costs, but only through August 8, 2026.

189.    The Hawaiian Electric Companies have taken substantial steps to

rebuild and replace covered property, including by replacing Transmission and

Distribution Assets, demolishing existing structures on the replacement site for

Substation 34, soliciting and evaluating quotes for the Warehouse and Office

rebuild, and preparing designs necessary for regulatory approval of the new

Substation 34. However, the Hawaiian Electric Companies' efforts have been

significantly delayed due to factors outside of their control, specifically, the

catastrophic, widespread, and lasting impact of the wildfires, the need for specialized professionals outside of Hawaii, and stringent regulatory requirements.

190.   On information and belief, the HEI Insurers contend that the Hawaiian Electric Companies are not entitled to recover Replacement Costs.

191.   There is an actual controversy between parties whose interests are real and adverse, and the issues are ripe for judicial determination.

192.   The Hawaiian Electric Companies seek a declaration pursuant to 28 U.S.C. § 2201 that the Hawaiian Electric Companies have "commenced" the rebuild for all covered property, including Substation 34 structures, Substation 34 T&D, and the Warehouse and Office within the meaning of the HEI Policies, and that accordingly, the Hawaiian Electric Companies are entitled to recover Replacement Costs under the HEI Policies.

193.    In the alternative, if this Court finds that the steps taken by the Hawaiian Electric Companies are not sufficient to satisfy the condition for recovery of Replacement Costs under the HEI Policies, the Hawaiian Electric Companies seek a declaration that the condition is invalid because fulfillment of the condition is impossible in light of the unforeseeable nature of the loss and logistical and regulatory hurdles to rebuild within the purported time limitation.

## VI.    PRAYER FOR RELIEF

194.    The Hawaiian Electric Companies respectfully request that the Court

enter judgment in its favor and against the HEI Insurers as follows:

    a.    A declaration of the rights and obligations of all HEI Insurers under

       the HEI Policies with respect to Plaintiffs' claims, which includes, but

       may not be limited to, a declaration that:

       i.    All losses covered exclusively under the HEI Policies must be

         apportioned to and fully and indemnified by the HEI Insurers;

      ii.    The HEI Insurers must indemnify Plaintiffs for all costs that will

         be incurred to rebuild Substation 34 and replace Substation 34

         Electrical Equipment;

     iii.    The HEI's rebuild estimate for the Warehouse and Office is

         reasonable and the HEI Insurers must indemnify Plaintiffs for

         those costs;

     iv.    The HEI Insurers are obligated to indemnify the Hawaiian Electric

         Companies for the costs to rebuild of Substation 34 and the

         Warehouse and Office, and to replace the Substation 34 Electrical

         Equipment on a Replacement Cost basis;

v.   The HEI Insurers are obligated to indemnify the Hawaiian Electric Companies for the installation of a new transformer at Substation 84 as Extra Expense;

vi.   The HEI Insurers are obligated to indemnify the Hawaiian Electric Companies for costs to repair and replace Transmission and Distribution Assets;

vii.   The HEI Insurers are obligated to indemnify the Hawaiian Electric Companies for Debris Removal costs;

viii.   The HEI Insurers are obligated to indemnify the Hawaiian Electric Companies for security and information technology Extra Expense;

b.   Finding that the HEI Insurers have repudiated and/or breached their contractual obligations under the HEI Policies by refusing to indemnify the Hawaiian Electric Companies for:

i.   Any amounts for (1) Substation 84 Extra Expense; (2) replacement of Transmission & Distribution Assets (3) Debris Removal, and (4) security and information technology Extra Expense;

      ii.  More than 29 percent of covered expenses for the temporary

mobile substations, pad mounted transformers, and the

Substation 34 T&D rebuild;

c.  For all compensatory and consequential damages to which Plaintiffs

are entitled;

d.  For pre- and post-judgment interest;

e.  For attorneys' fees, costs, and expenses incurred in the prosecution of

this action; and

f.  For such other relief as the Court deems just and proper.

DATED:  Honolulu, Hawaiʻi, February 13, 2026.

/s/ Randall C. Whattoff
RANDALL C. WHATTOFF
KAMALA S. HAAKE
SELENA J. LINDE (*PHV* forthcoming)
VIVEK CHOPRA (*PHV* forthcoming)
STEPHANIE A. VANCIL DE OLIVEIRA

Attorneys for Plaintiffs
HAWAIIAN ELECTRIC INDUSTRIES, INC.,
HAWAIIAN ELECTRIC COMPANY, INC.,
AND MAUI ELECTRIC COMPANY, LIMITED